State, ex rel. John M. Thayer, v. James E. Boyd.

[Filed April 7, 1892.]

1. **Judicial Notice:** Political Events. Courts will take notice, without proof, of events which are generally known within the limits of their jurisdiction. This will include changes in the office of the chief executive and such acts of public and general interest as may be said to be conspicuous events in the history of the state.

2. **Quo Warranto:** Relator Must Show the Better Title. One who seeks by *quo warranto* proceeding to obtain possession of an office held by another must show that he has a better title to such office than the incumbent.

3. ——: Abandonment of Office by Relator. When the only claim of the relator to an office is the right to hold over after the expiration of his term, on the ground that the respondent, his successor elect, is ineligible, and while the action is pending and undetermined he voluntarily abandons the office in controversy and surrenders it to the respondent, such act will disqualify him to further prosecute as relator, and amounts to an abandonment of the action.

Motion to reinstate.

*M. B. Reese,* and *Blair & Goss,* for the motion.

*J. C. Cowin, contra.*

Post, J.

A sufficient statement of the facts in this case will be found in the several opinions heretofore filed, 31 Neb., 682, and 12 Supreme Court Reporter, 375, reversing the judgment of ouster against the respondent in favor of the relator and remanding the case for further proceedings in this court. On the 15th day of March the respondent filed with the clerk of this court the mandate from the supreme court of the United States and moved for judgment in his favor on the pleadings. The motion aforesaid

came on for hearing the next day, in accordance with the
practice of the court, and was sustained and the action
dismissed, the relator making no appearance.    The relator
now, by the motion under consideration, asks to have the
judgment of dismissal set aside and for leave to reply and
proceed to trial on the merits of the case.    It is claimed
by him that his failure to resist the motion for judgment
is not attributable to any fault or negligence on his part,
but to the fact that he was at the time in question absent
in a distant part of the state and had no notice of the re-
spondent's intention to take any action at that time.    This
claim, in my judgment, is fully sustained by the affidavits
accompanying the motion, which are not contradicted.    If
this were an ordinary proceeding, that is, one in which a
cause of action by a competent and proper party is con-
ceded, I would say without hesitation that the present mo-
tion should be sustained.    It could not in that case be
denied without reversing the rule which has prevailed in
this court since my first acquaintance with it.    The respond-
ent, as well as the court, acted upon the assumption that
due and sufficient notice of his motion had been given.
The neglect to give proper notice was occasioned by a
change of counsel for the relator.    It is evident that par-
ties were acting in good faith, and we have no occasion to
impute blame to any one for the failure.    It is insisted by
counsel for the relator that the only question determined
by the supreme court of the United States is that the nat-
uralization of the respondent's father is well pleaded in the
answer, in other words, that under the allegations therof
respondent might prove that his father completed his nat-
uralization during his (respondent's) minority; and he ac-
cordingly tenders a reply in the nature of a general denial
of that part of the answer.    It is not necessary for the
purpose of this motion to consider the question of the cit-
izenship of the respondent, or to determine to what extent,
if at all, the judgment of the supreme court is conclusive

on that question, since the motion should be denied on other grounds.    Nor is it necessary to determine whether, in case the respondent is not a citizen, and therefore not eligible to the office of governor, the relator or the lieutenant governor would be entitled to the possession and emoluments thereof.    Whatever right the relator may have had to institute this action in the first instance it is clear to my mind that he has now no authority to prosecute it further.

It appears from the records in this case that a writ of ouster was issued from this court, by virtue of which the respondent was removed from the office of governor and the relator installed therein.    It is a fact of which we must take notice that the respondent is now in possession of said office and discharging the duties thereof.    We know, too, from our records that no order has been allowed or issued for restoration to respondent of the office from which he was ousted.    The inference is, therefore, that the office was voluntarily surrendered by the relator. It is not necessary, however, to rest our conclusion upon an inference.    That the relator, on the 8th day of February, 1892, voluntarily and on his own motion surrendered the office in question to the respondent, is a fact which ought to be, and is, generally known.    It is a part of the political history of the state of which the courts will take notice without proof. (1 Greenleaf on Evidence, 6; *Brown v. Piper*, 91 U. S., 37; 12 Am. & Eng. Encyc. of Law, 151.)

. It is a rule well settled in this state that a private person, having no direct interest in the office in controversy, cannot maintain on his own relation proceedings by *quo warranto* to test the title of another thereto. (*State v. Stein*, 13 Neb., 530; *State v. Hamilton*, 29 Id., 198.)   Having voluntarily surrendered the office the relator has no better title thereto or right to prosecute this action than any other private citizen of this state.   His title is possess-

ory only. His right to hold over in case the respondent is ineligible is, at most, an incident to his prior possession of the office. The distinction should be kept in mind between this case and one in which the state, in its sovereign capacity, interposes in the manner prescribed by law for the purpose of testing the title of an incumbent to an office. The statutory authority for this proceeding is found in section 1, chapter 71, Compiled Statutes, as follows:

"Section 1. When any citizen of this state shall claim any office which is usurped, invaded, or unlawfully held and exercised by another, the person so claiming such office shall have the right to file in the district court an information in the nature of a *quo warranto,* upon his own relation, and with or without the consent of the prosecuting attorney, and such person shall have the right to prosecute said information to final judgment: *Provided,* He shall have first applied to the prosecuting attorney to file the information, and the prosecuting attorney shall have refused or neglected to file the same."

The proceeding contemplated by the section quoted is a contest between two claimants for an office. It does not differ materially from any other contention involving private rights. Like other cases in which the plaintiff relies upon prior possession as evidence of title, proof of a voluntary abandonment is a complete defense.

It is said in Shortt on Informations, American edition, 183: "He alone is a competent relator who has some interest other than such as belong to the community at large in the question to be tried by the *quo warranto,* and who has not by any of the methods already adverted to disqualified himself from acting as prosecutor." Among the acts which are referred to above as disqualifying one to act as relator are the following, p. 177, viz.: Where it is sought to impeach a title conferred by a corporation election in which the relator has concurred. Where the relator was present and concurred in the election of the respondent as

mayor.   Where it was claimed an election to membership in a board of health was void for the reason that the official ballots were informal, it was held that the relator was disqualified by reason of having voted a similar ballot. This case is clearly within the principle of these authorities.   The act of the relator in surrendering the office to the respondent, and voluntarily retiring therefrom, disqualifies him to longer act as relator, and is in effect an abandonment of the action.   It is suggested that the surrender of the office to the respondent was the result of a misconception of the effect of the judgment of the supreme court of the United States and of what issues are concluded thereby.   In his affidavit he says in substance that on the 8th day of February he was induced to believe that when the mandate of that court was received it would contain an order to this court to enter judgment that the respondent had for more than two years last, prior to the general election of 1890, been a citizen of the United States.   The records of the courts in this country are always accessible to those interested in their judgments and decrees.

A mandate is a judicial command issued by a court or magistrate directing the proper officers to enforce a judgment or decree. (Bouvier's Law Dic.)   The relator was bound to know, and, we must assume, did know, that the mandate when issued would be merely a direction to take further proceedings in accordance with the judgment of the supreme court of the United States.   The judgment of that court, if entered, was notice to relator of what issues were concluded thereby.   If judgment had not been formally entered upon the records of the court, he must have known from the opinions filed to what extent his rights were determined by the court.   It is a fact within our knowledge that the substance of the opinions was made public within a few hours of the time they were filed.   It is not enough for relator to answer that he was wrongly informed as to the

effect of the decision.    He was bound at his peril to know the law of the case as declared by the court of last resort.

Since it is apparent that the relator is without authority to further prosecute, and that this proceeding must, for that reason, result in a judgment for the respondent, it is evident that the motion to set aside the judgment already rendered and for leave to reply should be

DENIED.

THE other judges concur.